UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

| | |
|---|---|
| JEFF RENFRO,<br><br>         Plaintiff,<br><br>     vs.<br><br>UNUM LIFE INSURANCE COMPANY OF AMERICA,<br><br>         Defendant. | Case No:  C 09-02661 SBA<br><br>**ORDER GRANTING DEFENDANTS' CROSS-MOTION FOR SUMMARY JUDGMENT AND DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT**<br><br>Dkts. 24, 31 |

Plaintiff brings this action under the Employment Retirement Income Security Act of 1974 ("ERISA"), seeking recovery of benefits under two long term disability plans issued by Unum Life Insurance Company of America ("Unum").  The sole question raised by Plaintiff is whether the two plans each permit the full offset of a single Social Security disability payment. The parties are presently before the Court on the parties' cross-motions for summary judgment. Dkts. 24, 31.

After the close of briefing, the parties filed a stipulation joining the disability plans as defendants in this action, and dismissing Unum as a defendant.  Dkt. 42.  The parties have further stipulated:

> the parties had intended that the cross-motion for summary judgment, the opposition to plaintiff's motion, the reply in support of summary judgment, and related documents filed by Unum are also made and filed on behalf of the Plan defendants, and that plaintiff's motion for summary judgment and related documents filed against Unum are filed against the Plan defendants; and
> … with the substitution of the Plan defendants for Unum, the cross-motions are now in a position to be ruled upon by the Court.

1  Dkt. 61.[1]

2    Having read and considered the papers filed in connection with these matters and being

3  fully informed, the Court hereby GRANTS Defendants' Cross-Motion for Summary Judgment

4  and DENIES Plaintiff's Motion for Summary Judgment, for the reasons set forth below.  The

5  Court, in its discretion, finds these matters suitable for resolution without oral argument.  See

6  Fed.R.Civ.P. 78(b).

7  **I.      FACTUAL BACKGROUND**

8        **A.      THE DISABILITY PLANS**

9    Plaintiff is covered under two separate Group Long Term Disability Plans (the "Plans"),

10  issued by Unum to Plaintiff's prior employers, the ServiceMaster Company ("ServiceMaster")

11  and Funky Door Yoga Studio ("Funky Door").  The ServiceMaster Plan was issued with Policy

12  No. 111292 001, and became effective on June 1, 2001.  UASP10001-39.  The Funky Door

13  Plan was issued with Policy No. 576938 001, and became effective on April 1, 2003.

14  UASP20001-44.

15    The Plans each state in pertinent part:[2]

16  **MONTHLY BENEFIT:**

17  . . .

18  **Your payment may be reduced by deductible sources of income and**

19  **disability earnings**.

20  UASP10003; UASP20003.

21                    **LONG TERM DISABILITY**
22                    **BENEFIT INFORMATION**

23    . . .

24  _____

25    [1] The parties appear to have filed this stipulation in response to Unum's argument in its summary judgment motion that it is not a proper party under ERISA, because it is the claim

26  fiduciary, but not the Plan Administrator of either plan.  See Def.'s Mot. at 10-11 (citing Ford v. MCI Commc'ns Corp. v. Health and Welfare Plan, 399 F.3d 1076, 1081-82 (9th Cir. 2005)).

27  Also, by prior stipulation, Plaintiff dismissed Defendants "Unum" and "Unumprovident," which Plaintiff had initially named in his complaint.

28
     [2] Bolded and italicized text is found in the original documents.

***HOW MUCH WILL UNUM PAY IF YOU ARE DISABLED?***

. . .

1. Multiply your monthly earnings by [60% for the ServiceMaster Plan; 66.6667% for the Funky Door Plan];

2. The Maximum monthly benefit is [$10,000 for the ServiceMaster Plan; $3,000 for the Funky Door Plan];

3. Compare the answer from Item 1 with the maximum monthly benefit. The lesser of these two amounts is your gross disability payment.

4. Subtract from your gross disability payment any deductible sources of income.

The amount figured in Item 4 is your monthly payment.

. . .

***WHAT ARE DEDUCTIBLE SOURCES OF INCOME?***

Unum will subtract from your gross disability payment the following deductible sources of income:

. . .

3.      The amount that you, your spouse and your children receive or are entitled to receive as disability payments because of your disability under:

- the United States Social Security Act.
…

UASP10014-17; UASP20015-19 (bracketed material added).

**GLOSSARY**

. . .

**DEDUCTIBLE SOURCES OF INCOME** means income from deductible sources listed in the plan which you receive or are entitled to receive while you are disabled. This income will be subtracted from your gross disability benefit.

. . .

**GROSS DISABILITY PAYMENT** means the benefit amount before Unum subtracts deductible sources of income and disability earnings.

. . .

**MONTHLY PAYMENT** means your payment after any deductible sources of income have been subtracted from your gross disability payment.

- 3 -

. . .

UASP10033-35; UASP20037-39.

The Funky Door Plan identifies Funky Door as the Plan Administrator, "with authority to delegate its duties"; the ServiceMaster Plan identifies ServiceMaster as the Plan Administrator, also "with authority to delegate its duties."  UASP20031; UASP10027.  Each plan contains a "Discretionary Acts" clause, which states:

> In exercising its discretionary powers under the Plan, the Plan Administrator, and any designee (which shall include Unum as a claims fiduciary) will have the broadest discretion permissible under ERISA and any other applicable laws, and its decisions will constitute the final review of your claim by the Plan.  Benefits under this Plan will be paid only if the Plan Administrator or its designee (including Unum), decides in its discretion that the applicant is entitled to them.

UASP10032; UASP20036 (emphasis added).

## B.    PLAINTIFF'S CLAIMS UNDER THE PLANS

On June 28, 2004, Plaintiff tendered a disability claim to Unum under the Funky Door Plan.  UACL00001.  Unum investigated the claim under the Funky Door Plan, found Plaintiff to be disabled under that plan, and began paying benefits under that Plan on a date not specified in the record.

On March 11, 2005, Plaintiff submitted an application for Social Security Disability Income ("SSDI") benefits to the Social Security Administration ("SSA").  UACL00739-740.  On June 30, 2005, Plaintiff tendered a disability claim to Unum under the ServiceMaster Plan.  UACL02172.  On August 2, 2005, the SSA denied Plaintiff's application for SSDI benefits, and Plaintiff appealed that decision.  UACL02655.

Turning back to Plaintiff's ServiceMaster claim, on August 25, 2005, Unum approved Plaintiff's claim under a reservation of rights, and began making monthly payments to him.  UACL02610-2613.  Unum reversed that decision on July 21, 2006, concluding that Plaintiff no longer met the definition of disability under the ServiceMaster Plan.  UACL03107-3111.  Plaintiff appealed that decision on December 21, 2006.  UACL03132.

Subsequently, on January 13, 2007, the SSA notified Plaintiff that his SSDI benefit denial had been overturned on appeal and he was entitled to SSDI benefits retroactive to November 2005.  UACL02092-2093.

Shortly thereafter, on February 26, 2007, Unum wrote to Plaintiff regarding the offset for Social Security benefits under the Funky Door Plan:

> The above policy provides for a reduction of your monthly benefit by any Social Security benefits paid for that same period.  Since you were awarded Social Security benefits on November 01, 2005 for a time period during which you received unreduced disability benefits, your claim now has an overpayment of $24,377.78.

UACL01740-1741.  Unum also informed Plaintiff that his net monthly benefit under the Funky Door Plan would be reduced to $1,270.00.  Id.  In other words, Unum began offsetting the amount of Plaintiff's SSDI benefit ($1,730.00) against the total benefits amount ($3,000) under the Funky Door Plan, for a net benefit of $1,270.  Unum also requested that Plaintiff reimburse it for the $24,377.78 overpayment.  Id.

On March 14, 2007, Unum wrote to Plaintiff, indicating that it had not received any reimbursement from Plaintiff, and explaining that it would begin applying the full amount of his Funky Door monthly benefit payment to the $24,377.78 overpayment "until it is recovered in full."  UACL01750-1751.

Later, on July 6, 2007, Unum advised Plaintiff that it had reversed the denial of his disability claim under the ServiceMaster Plan, and approved monthly payments under that plan, including back benefits owed to Plaintiff for the period of July 2006 to July 2007. UACL04005-4006.  Unum continued to make monthly payments under the ServiceMaster Plan in the full amount of $4,250, with no SSDI offset, through February 2009.

On August 2, 2007, Unum sent a letter to Plaintiff's counsel regarding its payment of back benefits under the ServiceMaster Plan, stating:  "Mr. Renfro has an outstanding payment on another claim with Unum in the amount of $19,297.78 (Employer-Funky Door Yoga Studio).  This overpayment is being reduced from the back-benefit being sent out on this [ServiceMaster] claim."  UACL04028-4029 (bracketed material added).  Unum also explained

that it would not seek an SSDI offset from the back benefits paid under the ServiceMaster Plan, but that Unum would continue to evaluate both clams for offsets going forward:

> As the prior claim [Funky Door] has been charged with back benefits for Mr. Renfro's receipt of Social Security Disability, we have not adjusted the benefit on this claim [ServiceMaster] for the period of payment above [i.e., July 2006-July 2007]. We are continuing to evaluate both claims for consideration of offsets going forward.

Id. (bracketed material added).

Unum alleges that in April 2009 it discovered that it had been overpaying Plaintiff under the ServiceMaster Plan because it had failed to offset his SSDI benefits from the ongoing monthly payments under that Plan. UACL02106-2107; 02118-2119. Unum calculated the overpayment to be in excess of $97,000.00. UACL02106. By letter dated April 29, 2009, Unum advised Plaintiff that it had overpaid him, that it would not seek reimbursement for that overpayment, but that it would correct his payments going forward. UACL02112-2115. That letter explained:

> It is our position that Mr. Renfro's Social Security Disability benefits are offsettable under both long term disability policies. This determination is based on the contract language described above which is contained in both long term disability policies. At the time Mr. Renfro filed his claim, he had two employers with two incomes, and therefore, we must consider the contract language of both policies. After reviewing the overpayment that has occurred, and the length of time that payments have been paid in an incorrect manner, we have determined that it would be inappropriate to pursue an overpayment. Therefore, we will be reducing ongoing monthly benefits under both claims by the amount of the monthly Social Security Disability benefits. We will not be pursuing recovery of the overpayments made to date.

UACL02113. Furthermore, Unum's internal review of the issue indicated:

> It would be appropriate to offset both claims for SSDI. Both LTD policies contain the appropriate SSDI offset language and this determination is consistent with established policies and procedures.

UACL02118.

Plaintiff's counsel appealed Unum's decision by letter dated May 6, 2009, stating that he disagreed with Unum's position that the $1,731 Social Security benefit could be offset

against the both Funky Door benefit and the ServiceMaster benefit.  UACL02129-2133.

Subsequently, by letter dated June 1, 2009, Unum advised Plaintiff that his appeal was denied:

> Unum initially offset SSDI payments only from the Funky Door Yoga policy (576938).  Starting 03/22/09 we reduced Mr. Renfro's benefits under the Service Master Company policy (111292) for the amount he receives from SSDI.

> We received your client's appeal on 05/06/09.  You argued that by reducing Mr. Renfro's long term disability benefits under policy 111292 and policy 576938 Unum was "double dipping".  You noted that by previously not reducing benefits under both policies Unum acknowledged an inability to do so, and finally you invoked the concept of estoppel.  The policies Mr. Renfro is *(sic)* covered under unambiguously outlines *(sic)* how benefits are to be calculated.  Both plans specifically and separately state that Unum will subtract the amount Mr. Renfro receives in disability benefits under the United States Social Security Act.  As Mr. Renfro is insured under two distinct disability policies, Unum is simply abiding by the specific terms of each policy and not double dipping as suggested.  We acknowledge that prior to 03/22/09 Unum did not offset SSDI benefits under both policy 111292 and policy 576938.

> Please note – the Service Master Policy (111292) also states:

> WHAT HAPPENS IF UNUM OVERPAYS YOUR CLAIM?
> Unum has the light to recover any overpayments due to:
> - fraud;
> - any error Unum makes in processing a claim; and
> - your receipt of deductible sources of income.

> We maintain the position that Unum is permitted to apply all policy provisions as written in both plans.  As noted above, Unum offset Mr. Renfro's SSDI benefit under policy 111292 and policy 576938 starting 03/22/09, however, in good faith we have waived the overpayment resulting from Mr. Renfro's receipt of SSDI benefits under the ServiceMaster policy (111292) prior to 03/22/09.

> Based on the above reasons, we have determined we must uphold our previous denial decision.

UACL02153-2156.

## II.    **PROCEDURAL HISTORY**

Plaintiff filed this ERISA action on June 15, 2009, seeking recovery of benefits that he alleges were wrongfully withheld by Defendants under the Plans.  Specifically, Plaintiff alleges that Defendants are not entitled to take the Social Security offset twice, i.e., once under each of the Funky Door Plan and the ServiceMaster Plan.  Compl. ¶¶ 14-15.

1    Now, the parties have filed cross-motions for summary judgment.  As indicated in their

2    moving papers, Defendants do not dispute that Plaintiff is disabled.  Moreover, Plaintiff does

3    not dispute that it is proper for Defendants to apply the Social Security offset under the Funky

4    Door Plan.  Pl.'s Mot. at 5.  However, the parties dispute the manner in which Unum (acting as

5    Defendants' designee and the claim fiduciary) interpreted the Plan provisions describing how

6    Social Security offsets are to be applied under the Plans.  Put simply, Defendants argue that

7    Unum properly applied the Social Security offset under both Plans, and summary judgment

8    should thus be granted in their favor.  Plaintiff takes the contrary position in his motion, i.e.,

9    that Unum abused its discretion in applying the Social Security offset under both Plans.

10   ## III.   LEGAL STANDARD

11       ### A.   SUMMARY JUDGMENT STANDARD

12       Rule 56(c) of the Federal Rules of Civil Procedure authorizes summary judgment if

13   there is no genuine issue as to any material fact and the moving party is entitled to judgment as

14   a matter of law.  See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986).  The

15   moving party bears the initial burden of demonstrating the basis for the motion and identifying

16   the portions of the pleadings, depositions, answers to interrogatories, affidavits, and admissions

17   on file that establish the absence of a triable issue of material fact.  Celotex Corp. v. Catrett,

18   477 U.S. 317, 323 (1986).  If the moving party meets this initial burden, the burden then shifts

19   to the non-moving party to present specific facts showing that there is a genuine issue for trial.

20   Fed.R.Civ.P. 56(e); Celotex, 477 U.S. at 324; Matsushita Elec. Indus. Co. v. Zenith Radio

21   Corp., 475 U.S. 574, 586-87 (1986).

22       "On a motion for summary judgment, 'facts must be viewed in the light most favorable

23   to the nonmoving party only if there is a 'genuine' dispute as to those facts.'"  Ricci v.

24   DeStefano, -- U.S. --, 129 S.Ct. 2658, 2677 (2009) (quoting Scott v. Harris, 550 U.S. 372, 380

25   (2007)).  An issue of fact is "material" if, under the substantive law of the case, resolution of

26   the factual dispute might affect the outcome of the claim.  See Anderson, 477 U.S. at 248.

27   Factual disputes are genuine if they "properly can be resolved in favor of either party."  Id. at

28   250.  Accordingly, a genuine issue for trial exists if the non-movant presents evidence from

1   which a reasonable jury, viewing the evidence in the light most favorable to that party, could

2   resolve the material issue in his or her favor.  Id.  "If the evidence is merely colorable, or is not

3   significantly probative, summary judgment may be granted."  Id. at 249-50 (internal citations

4   omitted).

5           **B.    STANDARD OF REVIEW**

6           As for review of a Plan Administrator's decision, "a denial of benefits 'is to be

7   reviewed under a de novo standard unless the benefit plan gives the administrator …

8   discretionary authority to determine eligibility for benefits or to construe the terms of the

9   plan.'"  Montour v. Hartford Life & Acc. Ins. Co., 588 F.3d 623, 629 (9th Cir. 2009) (quoting

10  Burke v. Pitney Bowes Inc. Long-Term Disability Plan, 544 F.3d 1016, 1023 (9th Cir. 2008)).

11  Where, as here, the Plans "'do[] grant such discretionary authority, we review the

12  administrator's decision for abuse of discretion.'"  Id. (quoting Saffon v. Wells Fargo & Co.

13  Long Term Disability Plan, 522 F.3d 863, 866 (9th Cir. 2008)).  "Applying a deferential

14  standard of review …. means only that the plan administrator's interpretation of the plan 'will

15  not be disturbed if reasonable.'"  Conkright v. Frommert, 130 S.Ct. 1640, 1651, --- U.S. ---

16  (2010) (quoting Firestone Tire and Rubber Co. v. Bruch, 489 U.S. 101, 111 (1989)).

17          "The manner in which a reviewing court applies the abuse of discretion standard,

18  however, depends on whether the administrator has a conflicting interest."  Id.  In this case, the

19  Plans grant Unum, as the Plan Administrators' designee, full discretion in considering

20  disability claims.  See UASP10032; UASP20036.  Yet, Unum, as the insurer, also funds the

21  benefits provided under the Plans.  See UASP10005; UASP20006.  Unum, therefore, has a

22  structural conflict of interest in its administration of the Plans.  See Montour, 588 F.3d at 627-

23  30 (finding a structural conflict of interest where the funding insurer was also designated the

24  administrator of the plan, "with discretionary authority to interpret Plan terms and to determine

25  eligibility for benefits"). [3]

26

27  _____

28          [3] In their moving papers, Defendants do not dispute that a structural conflict of interest exists due to Unum acting as both the funder and administrator of the Plans.

Accordingly, this Court "must take into account the administrator's conflict of interest as a factor in the analysis." Id. at 630. "More particularly, the court must consider numerous case-specific factors, including the administrator's conflict of interest, and reach a decision as to whether discretion has been abused by weighing and balancing those factors together." Id. "If those facts and circumstances indicate the conflict may have tainted the entire administrative decisionmaking process, the court should review the administrator's stated bases for its decision with enhanced skepticism: this is functionally equivalent to assigning greater weight to the conflict of interest as a factor in the overall analysis of whether an abuse of discretion occurred." Id. at 631.

Furthermore, a "court may weigh a conflict more heavily if, for example, the administrator provides inconsistent reasons for denial; fails adequately to investigate a claim or ask the plaintiff for necessary evidence; fails to credit a claimant's reliable evidence; or has repeatedly denied benefits to deserving participants by interpreting plan terms incorrectly or by making decisions against the weight of evidence in the record." Abatie v. Alta Health & Life Ins. Co, 458 F.3d 955, 968-969 (9th Cir. 2006) (internal citations omitted).

## IV.   ANALYSIS

### A.   UNUM DID NOT ABUSE ITS DISCRETION IN INTERPRETING THE PLANS

Plaintiff has offered no statutory or decisional authority that directly addresses the primary question raised by the parties, i.e., whether the ServiceMaster and Funky Door Plans each permit the full offset of a single Social Security disability payment. Defendants, by contrast, rely on Isner v. Minnesota Life Ins. Co., 677 F.Supp.2d 950 (E.D. Mich. 2009), in which the Michigan District Court addressed this issue under similar circumstances.

There, the plaintiff had long term disability ("LTD") insurance coverage with Minnesota Life, based upon his employment as an agent for Minnesota Life, and a separate LTD policy with Unum, based upon his employment with another employer. Id. at 952. Several years after the issuance of these policies, the plaintiff became disabled and made claims for LTD benefits under both policies. Id. Both of the plaintiff's claims were approved, and the defendants each paid LTD benefits in the full amount under their respective policies.

Id.  At a later date, the plaintiff began receiving Social Security Disability benefits.  Id.

Thereafter, pursuant to the LTD plans' "other income" provisions, each defendant reduced the

plaintiff's LTD benefits by the full amount of his monthly Social Security award.  Id.  This

reduction in benefits represented twice the amount of Social Security benefits he actually

received.  Id.  The plaintiff contended this "double-offset" was impermissible under the

language and intent of the respective policies.  Id.

In Isner, both plans informed claimants how their monthly benefits would be calculated

under the plans.  Specifically, the Minnesota Life plan provided that monthly benefits would be

calculated by "[d]educt[ing] other income benefits," which the plan defined as including

"disability benefits for which you are eligible."  Id. at 952-53.  Likewise, the Unum plan

provided that, to calculate monthly benefits, "[s]ubtract from your gross disability payment any

deductible sources of income," which the Unum plan defined as "[t]he amount that you, your

spouse and your children receive or are entitled to receive as disability payments because of

your disability under: … the United States Social Security Act."  Id. at 953-54.

The Isner court rejected the plaintiff's argument that a double offset violated the

language and intent of the policies:

> Before a Court can ignore the plain language of a policy, however, there must be
> an ambiguity necessitating a choice between reasonable interpretations of the
> policy language.  *Kolkowski v. Goodrich Corp*., 448 F.3d 843, 850 (6th Cir.
> 2006).  Whether the language is ambiguous is a question of law.  *Id*. at 851.  In
> this case, I have no trouble concluding that "the language of the plan itself as
> known by the employees, or as the employees should have known" is
> unambiguous.  *See id*. at 850.  The plans expressly authorize integration of all
> Social Security benefits, without regard for whether any other plan integrates
> the same benefits.  As the Sixth Circuit explained in *McBarron*, each plan "has the
> absolute right to enforce its contract" with Plaintiff, even if the result is harsh.
> *McBarron*, 771 F.2d at 98-99.  Any alternative urged by Plaintiff could endanger
> the stability of the plans by forcing them to provide benefits not contemplated by
> the plans.  *See id*. at 99.

Id. at 957-58.  The court further stated that, "[b]ecause courts do not have the power to redraft

insurance contracts in order to palliate the effects of considered language on the occasional

hard case," it was "constrained to give effect to those provisions."  Id. at 957 (internal citations

omitted).  Lastly, the court found that "Plaintiff received the exact benefits provided for in the policies."  Id.

The reasoning of the Isner court applies with equal force to this case.  Here, in accordance with Ninth Circuit authority, the Court finds the language of the Plans to be unambiguous.  See Sony Computer Entm't Am. Inc. v. Am. Home Assur. Co., 532 F.3d 1007, 1012 (9th Cir. 2008) ("a provision is ambiguous only if it is susceptible to two or more reasonable constructions despite the plain meaning of its terms within the context of the policy as a whole. … although unresolved ambiguities in insurance policies are generally construed against the insurer … that principle only applies if the meaning of a term is ambiguous in light of the policy as a whole, and if coverage is within the objectively reasonable expectations of the insured.") (internal citations and quotations omitted).[4]  Specifically, the terms of both Plans, issued by different of Plaintiff's employers, clearly state that deductible sources of income, including Social Security benefits, will reduce Plaintiff's monthly payment: "MONTHLY PAYMENT means your payment after any deducible sources of income have been subtracted from your gross disability payment."  UASP10035; UASP20039.  The Plan language is not ambiguous, and each Plan is entitled to enforcement according to its terms.  Plaintiff's contention that policy language means one thing when standing alone, and means something entirely different if a second policy covers the same party, is wholly unsupported.  As similarly found in Isner, Plaintiff here received the precise benefits provided for under the Plans, and to

---

[4] See also Pension Trust Fund for Operating Eng'rs v. Fed. Ins. Co., 307 F.3d 944, 950 (9th Cir. 2002) ("The best evidence of the parties' intent is the plain language of the policy: The 'clear and explicit' meaning of these provisions, interpreted in their 'ordinary and popular sense,' unless 'used by the parties in a technical sense or a special meaning is given to them by usage,' controls judicial interpretation.  Thus, if the meaning a lay person would ascribe to contract language is not ambiguous, we apply that meaning.") (quoting AIU Ins. Co. v. Superior Court, 51 Cal.3d 807, 822 (1990)).

1    interpret the Plans otherwise could "endanger the stability of the plans by forcing them to

2    provide benefits not contemplated by the plans."  See Isner, 677 F.Supp.2d at 958.[5]

3          Plaintiff's attempts at distinguishing Isner are unavailing.  For instance, Plaintiff argues,

4    without elaboration, that Isner is distinguishable because the carriers "did not comingle and

5    combine the claims or pay off an overpayment from one with the benefits of another," as

6    Plaintiff alleges Unum did here.  Pl.'s Opp. at 14.  On this issue, the evidence shows that Unum

7    informed Plaintiff that it was "transferring" his claim under the ServiceMaster Plan "to the

8    representative who is currently working on this claim from Funky Door Yoga Studio," in order

9    to prevent Plaintiff "from duplicating his efforts in the future for these two claims …."

10   UACL04028-4029.  The evidence also shows that, because Plaintiff had failed to reimburse

11   Unum for the overpayment made under the Funky Door Plan, Unum sought reimbursement of

12   those sums by reducing the back benefits it paid to Plaintiff under the ServiceMaster Plan.  Id.

13   Specifically, Unum informed Plaintiff: "Mr. Renfro has an outstanding payment on another

14   claim with Unum in the amount of $19,297.78 (Employer-Funky Door Yoga Studio).  This

15   overpayment is being reduced from the back-benefit being sent out on this [ServiceMaster]

16   claim."  Id. (bracketed material added).  Of note, the Plans expressly provide for recovery of

17   overpaid claims:  "[i]f Unum overpays your Claim … Unum has the right to recover any

18   overpayments due to … any error Unum makes in processing a claim … you must reimburse

19   us in full.  We will determine the method by which the repayment is to be made."

20   UASP10006; UASP20007.  Plaintiff does not explain how Unum's actions in this regard are an

21   ────────────────────────

22          [5] Plaintiff also argues that, under the language of the ServiceMaster Plan, once he
     receives an SSDI payment and it is offset against the Funky Door Plan, "it is no longer
23   something that he has 'received or is entitled to receive' when it comes to determining offsets
     under the ServiceMaster Plan."  Pl.'s Opp. at 7-8.  With that argument – which is unsupported
24   by any authority – Plaintiff is attempting to inject ambiguity into language that, on its face, is
     unambiguous.  Furthermore, Plaintiff, citing Pengilly v. Guardian Life Ins. Co. of America, 81
25   F.Supp.2d 1010 (N.D. Cal. 2000) (Armstrong, J.), asserts that the Court should reject Unum's
     interpretation of the Plans because it conflicts with the Plans' plain language.  See 81
26   F.Supp.2d at 1020 ("the court should not upset a plan administrator's construction of a term,
     even if the term is ambiguous, unless the construction conflicts with the plan's plain
27   language").  Plaintiff, however, fails to explain how Unum's interpretation conflicts with the
     Plan language.  Indeed, as indicated above, the Court finds that Unum's interpretation is
28   consistent with the plain language of the Plans.

abuse of discretion, nor does he explain why these actions render the analysis set forth in <u>Isner</u> inapplicable here.

Furthermore, Plaintiff asserts that <u>Isner</u> is distinguishable because that court "did no analysis of whether the double offset violated the plain meaning of the Plans at issue, nor did the Court there analyze the issue of the proper construction of the words 'received or entitled to receive.'" <u>Id</u>. at 15. This assertion is without merit, as the <u>Isner</u> decision clearly quotes and interprets the disputed policy language, which, with respect to the Unum policy in <u>Isner</u>, is identical to the language at issue in the Funky Door and ServiceMaster Plans.

In sum, Unum did not abuse its discretion in interpreting the Plans as each requiring an offset of Plaintiff's Social Security disability payment.

## B.   PLAINTIFF'S REMAINING ARGUMENTS

Next, Plaintiff asserts that Unum's structural conflict of interest tainted its decision-making process in interpreting the Plans. Plaintiff further argues that the rule of *contra proferentem* supports his interpretation of the Plans, and that Defendants are equitably estopped from asserting an SSDI offset under both Plans. Each of those arguments is addressed below.

### 1.   Unum's Conflict of Interest

Plaintiff alleges that Unum handled his claims inconsistently and failed to provide an explanation for its benefits decisions. According to Plaintiff, these factors establish that Unum's structural conflict of interest tainted its Plan interpretation. For the reasons stated below, Plaintiff's argument is without merit.

### a)   *Inconsistent Claims Handling*

Plaintiff asserts that Unum treated his claim under the ServiceMaster Plan inconsistently: first, by taking the position that it was not entitled to an SSDI deduction under that Plan; and then, nineteen months later, taking the contrary position that the SSDI benefits could be deducted from the Plan. In so arguing, Plaintiff cites an August 2, 2007 claim note from Unum's file, which states: "it is recommended we not further reduce this claim [ServiceMaster] by the same SSDI benefit being reduced on 1400191 [Funky Door]. It would

1   be reasonable to offset half of the award on each claim but that consideration should be left to

2   the team reviewing both claims ongoing."  UACL02183 (bracketed material added).

3          As noted by Defendants, Plaintiff has taken this quote out of context.  Plaintiff's SSDI

4   benefits were approved while benefits under the ServiceMaster Plan had been denied (before

5   being later reinstated).  Plaintiff received back benefits from Social Security which, under the

6   terms of the Funky Door Plan (and the ServiceMaster Plan), required reimbursement.

7   However, benefits under the ServiceMaster Plan had been discontinued, and so, when

8   reinstating the ServiceMaster Plan benefits, Unum decided not to further reduce the back

9   benefits owed based on the SSDI benefit.  See UACL02183.  Taken in context of the rest of the

10  document, it is clear that the note refers only to back benefits, and does not address future

11  benefits.   Furthermore, the note itself confirms that it is not a final decision.  Indeed, the letter

12  sent to Plaintiff's counsel on August 2, 2007 explains that Unum would not seek the SSDI

13  overpayment from back benefits paid under the ServiceMaster Plan, but that Unum reserved

14  the right to deduct the SSDI benefit going forward:

15          As stated in our conversation and captured in your letter, the back benefit
            payable from July 22, 2006 through July 21, 2007 is $51,000.00 on this
16          [ServiceMaster] claim.  Mr. Renfro has an outstanding payment on another claim
            with Unum in the amount of $19,297.78 (Employer-Funky Door Yoga Studio).
17          This overpayment is being reduced from the back-benefit being sent out on this
            [ServiceMaster] claim.  The net benefit being sent under separate cover is
18          $31,702.22.

19          As the prior claim has been charged with back benefits for Mr. Renfro's receipt
20          of Social Security Disability, we have not adjusted the benefit on this claim for
            the period of payment above.  We are continuing to evaluate both claims for
21          consideration of offsets going forward.

22  UACL04028-4029 (bracketed material added).

23          Indeed, in April 2009, Unum revisited the SSDI offset issue, as indicated in the

24  following claim note:

25          On August 2, 2007, a letter was sent to the insured's attorney advising that claim
26          # 1400191 (Funky Door Yoga Studio; CA situs) had been overpaid due to an
            SSDI award. The overpayment was withheld from claim 2078890
27          (ServiceMaster, IL situs).

28

1
2
3
4

> As of August 2, 2007, a decision was made to not pursue a retro overpayment from both claims as the insured only received one SS retro and it would have been unreasonable to pursue an overpayment on both claims. The letter further noted that we would continue to evaluate both claims for consideration of offsets moving forward. A determination was never made with respect to an ongoing SSDI offset in both claims.

5
6

> The claimant's attorney requested that we consider commutation of the claims. ...

7

> The file was sent to FRU for review of the SSDI offset for both claims.

8
9

> It would be appropriate to offset both claims for SSDI. Both LTD policies contain the appropriate SSDI offset language and this determination is consistent with established policies and procedures.

10
11

> A clerical error was made by not making a timely determination after sending the August 2, 2007 letter. Recovery guidelines would allow us to pursue an OP back to the date of the August 2, 2007 letter.

12
13
14

> On August 2, 2007, the claim was not placed on reservation of rights, and the insured was not advised of a decision with respect to ongoing offsets. Therefore, no overpayment will be pursued. SSDI will be offset from both claims moving forward.

15   UACL02118-2119. Thus, the record shows that, rather than treating the ServiceMaster claim

16   inconsistently, Unum was continuing to evaluate the appropriate payment to be made under

17   that claim.

18       Next, Plaintiff argues that Unum's handling of his claims was inconsistent because: on

19   one hand, Unum "comingled" the claims by deducting the amounts Plaintiff owed, by way of

20   overpayment, under the Funky Door Plan from the back benefits due under the reinstated

21   ServiceMaster Plan; and on the other hand, Unum treated the Plans as "separate contracts" that

22   each permit an SSDI offset. However, as explained above, the Plans state that Unum can seek

23   repayment from the insured of overpaid claims, and they provide that Unum has discretion in

24   "determin[ing] the method by which the repayment is to be made." UASP10006; UASP20007.

25   Moreover, Unum specifically informed Plaintiff's counsel on August 2, 2007 that it would be

26   reducing Plaintiff's back benefits under the ServiceMaster Plan as reimbursement for the

27   overpayment made under the Funky Door Plan, and there is no evidence in the record that

28

1   Plaintiff or his counsel objected to such a reduction.  For these reasons, Plaintiff's argument in

2   this regard is not compelling.

3           Plaintiff further argues that Unum, by not mentioning the SSDI offset in four letters to

4   Plaintiff's counsel regarding the ServiceMaster claim – dated April 11, 2008, October 8, 2008,

5   December 9, 2008, and December 31, 2008 – demonstrated that "an offset was never intended"

6   under that Plan.  Pl.'s Mot. at 1 (citing UACL01983-1985; UACL04122-4123; UACL04143;

7   UACL04177-4178).  Those letters, however, were all sent to Plaintiff in 2008, before Unum

8   discovered in April 2009 that it had been overpaying Plaintiff by not taking the SSDI offset

9   under the ServiceMaster Plan.  UACL02106-2107; 02118-2119.  Indeed, Unum had previously

10  notified Plaintiff in its August 2, 2007 letter that it was "continuing to evaluate both claims for

11  consideration of offsets going forward."  UACL02119.  Thus, these 2008 letters are not

12  sufficient to establish that Unum never intended to take an SSDI offset under the

13  ServiceMaster Plan.

14          Plaintiff also relies on Lang v. Long-Term Disability Plan of Sponsor Applied Remote

15  Tech., Inc., 125 F.3d 794 (9th Cir. 1997), which holds that inconsistency in claims

16  administration is an indication that the administrator's decision may have been tainted by self-

17  interest.  Id. at 799.  Lang is readily distinguishable.  There, the court found that the

18  administrator had handled a claim inconsistently by giving different reasons for denial:  first,

19  denying benefits on the ground that the insured had no physical disorder; and, second, in the

20  face of evidence showing that she did suffer from a physical disorder, denying benefits on the

21  ground that her disability was not caused by that physical disorder.  Id.  By contrast, here, there

22  is no evidence that Unum provided different reasons for its decision to offset SSDI benefits

23  under both Plans.  Rather, the evidence shows that Unum's investigation regarding the proper

24  treatment of the SSDI benefits was ongoing.

25          In sum, the evidence Plaintiff relies upon is insufficient to establish that Unum was

26  inconsistent in its treatment of his claims under the Plans, so as to indicate that its

27  decisionmaking process was tainted by its structural conflict of interest.

28

**1**

*b)*        ***Unum's Explanation of Its Decision***

**2**        In his motion, Plaintiff contends that Unum failed to provide an explanation for its

**3** decision to take an SSDI offset under the ServiceMaster plan.  At bottom, Plaintiff asserts that

**4** Unum abused its discretion by rendering its decision without explanation.  See Booton v.

**5** Lockheed Medical Ben. Plan, 110 F.3d 1461, 1463 (9th Cir. 1997) (explaining that "[i]f

**6** benefits are denied in whole or in part," an ERISA plan "shall provide to every claimant who is

**7** denied a claim for benefits written notice setting forth in a manner calculated to be understood

**8** by the claimant: (1) The specific reason or reasons for the denial; (2) Specific reference to

**9** pertinent plan provisions on which the denial is based; (3) A description of any additional

**10** material or information necessary for the claimant to perfect the claim and an explanation of

**11** why such material or information is necessary; and (4) Appropriate information as to the steps

**12** to be taken if the participant or beneficiary wishes to submit his or her claim for review").

**13**        Plaintiff's argument is not supported by the record.  On April 29, 2009, Unum sent a

**14** three-page letter to Plaintiff's counsel explaining its position that SSDI benefits were off-

**15** settable under both Plans (i.e., that Plaintiff's claim for benefits under each Plan was "denied in

**16** part" because it was reduced by the SSDI benefit).  UACL02112-2115.  That letter sets forth

**17** the policy provisions upon which Unum relied, describes Unum's interpretation of these

**18** provisions, and explains how Plaintiff could obtain additional review of Unum's decision.  Id.

**19** Indeed, Plaintiff subsequently appealed Unum's decision.  In denying the appeal, Unum sent a

**20** four-page letter to Plaintiff's counsel on June 1, 2009, again quoting the policy language upon

**21** which it relied and explaining Unum's position.  UACL02153-2156.  Furthermore, in that

**22** letter, Unum directly addresses the very arguments that Plaintiff now repeats in his instant

**23** motion:  that taking an offset under both Plans amounts to "double dipping"; that Unum

**24** acknowledged its inability to take an offset under both Plans by previously not reducing

**25** benefits; and that Unum was equitably estopped from seeking the double offset.  Id. [6]

**26**

**27**        _____

**28**        [6] Plaintiff does not assert that Unum erred in sending written notice of its benefits
decision to his attorney, rather than directly to him.  Instead, Plaintiff asserts that Unum failed
to adequately explain its decision in its letters to his counsel.  See Pl.'s Mot. at 2.

1    Accordingly, Plaintiff has not established that Unum failed to provide an adequate

2    explanation for its benefits decision, so as to support Plaintiff's contention that Unum's

3    interpretation of the Plan language was tainted by its structural conflict of interest.

4            **2.        The Rule of *Contra Proferentem***

5            Plaintiff argues that the rule of *contra proferentem* requires a finding that Unum abused

6    its discretion in interpreting the Plans to allow for a double offset of his SSDI benefits.  "A

7    typical statement of the rule is that if, after applying the normal principles of contractual

8    construction the insurance contract is fairly susceptible of two different interpretations, another

9    rule of construction will be applied: the interpretation that is most favorable to the insured will

10   be adopted."  Kunin v. Benefit Trust Life Ins. Co., 910 F.2d 534, 539 (9th Cir. 1990).  The rule,

11   however, is inapplicable where, as here, the plan grants the administrator discretion to construe

12   its terms.  See Blankenship v. Liberty Life Assur. Co. of Boston, 486 F.3d 620, 625 (9th Cir.

13   2007) ("The rule applies in interpreting ambiguous terms in an ERISA-covered plan except

14   where the plan: … grants the administrator discretion to construe its terms ….");  accord

15   Pengilly, 81 F.Supp.2d at 1020 ("Plaintiff assumes that ambiguous terms must be construed in

16   the insured's favor pursuant to the contract interpretation doctrine of *contra proferentem.*

17   …When, as here, the applicable standard of review is abuse of discretion, plaintiff's

18   assumption is incorrect.").  Indeed, Plaintiff offers no argument to the contrary in his reply

19   brief.  For these reasons, Plaintiff's reliance on the rule of *contra proferentem* fails.[7]

20           **3.        Equitable Estoppel**

21           In his motion, Plaintiff argues that Defendants should be equitably estopped from

22   asserting an offset under both Plans, based on Unum's alleged misrepresentation that it would

23   not apply the SSDI offset to the ServiceMaster claim.

24           An ERISA beneficiary may recover benefits under an equitable estoppel theory upon

25   establishing: (1) a material misrepresentation; (2) reasonable and detrimental reliance upon the

26   representation; (3) extraordinary circumstances; (4) the provisions of the plan at issue are

27

28        [7] Plaintiff's reliance on the rule also fails because this case presents two different
     contracts, which Plaintiff argues are ambiguous or unreasonable when read together.

ambiguous such that reasonable persons could disagree as to their meaning or effect; and (5) representations made to the employee involving an oral interpretation of the plan. Pisciotta v. Teledyne Indus., Inc., 91 F.3d 1326, 1331 (9th Cir. 1996); see also Marx v. Loral Corp., 87 F.3d 1049, 1056 (9th Cir. 1996) ("equitable estoppel principles are applicable under ERISA only when the terms of the plan are ambiguous").

Plaintiff's equitable estoppel claim fails on at least two grounds. First, Plaintiff provides no evidence, by way of declaration or otherwise, to support his bare assertion that he detrimentally relied upon Unum's representations. See Pl.'s Mot. at 22.[8] Second, as explained above, the terms of the Plans are not ambiguous. Thus, Plaintiff's equitable estoppel argument is without merit.

C.   PLAINTIFF'S REQUEST FOR ATTORNEY'S FEES AND COSTS

As a final matter, Plaintiff argues that he is entitled to an award of attorney's fees and costs under 29 U.S.C. § 1132(g)(1), which provides that, in an ERISA action, "the court in its discretion may allow a reasonable attorney's fee and costs of action to either party." An award under Section 1132(g)(1) is based on consideration of the following factors: (1) the degree of the opposing party's culpability or bad faith; (2) the ability of the opposing party to satisfy an award of fees; (3) whether an award of fees against the opposing party would deter others from acting under similar circumstances; (4) whether the party requesting fees sought to benefit all participants and beneficiaries of an ERISA plan or to resolve a significant legal question regarding ERISA; and (5) the relative merits of the parties' positions. Canseco v. Constr. Laborers Pension Trust for S. Cal., 93 F.3d 600, 609 (9th Cir. 1996).

Here, Plaintiff argues that a fee and costs award is appropriate because "the position taken by UNUM in this case is so outlandish that an award of Attorney[']s Fees and Costs is necessary." Pl.'s Mot. at 23. Plaintiff further argues that an award is required "as a deterrent to prevent UNUM and other plan administrator's from taking such patently ridiculous positions."

---

[8] As the moving party, Plaintiff bears the initial burden of demonstrating the basis for the motion and identifying the portions of the pleadings, depositions, answers to interrogatories, affidavits, and admissions on file that establish the absence of a triable issue of material fact. Celotex, 477 U.S. at 323.

Id.  In view of the Court's finding that Unum's interpretation of the Plans was not an abuse of discretion, the relevant Canseco factors – including the lack of culpability or bad faith on Unum's part, the lack of any need to provide deterrence, and the relative merits of the parties' positions – all militate against a fee and costs award in this case.  Thus, Plaintiff's request for an award of attorney's fees and costs is DENIED.

## V.   CONCLUSION

For the foregoing reasons,

IT IS HEREBY ORDERED THAT:

1.     Defendants' Cross-Motion for Summary Judgment is GRANTED.

2.     Plaintiff's Motion for Summary Judgment is DENIED.

3.     Plaintiff's request for an award of attorney's fees and costs is DENIED.

4.     This Order terminates Dockets 24 and 31.

IT IS SO ORDERED.

Dated: January 11, 2011

_____
SAUNDRA BROWN ARMSTRONG
United States District Judge